AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

| | |
|---|---|
| United States of America ) | |
| v. ) | Case No. H11-1445m  W |
| Mark Allan James ) | |
| ) | |
| Defendant(s) | |

**Unsealed**
Public and unofficial staff access to this instrument are prohibited by court order.

FILED
NOV 08 2011
...sy, Clerk of Court

UNITED STATES
ERN DISTRICT OF TEXAS

## CRIMINAL COMPLAINT

11/9/2011

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  04/01/2010 - 11/08/2011  in the county of  Harris  in the  Southern  District of  Texas , the defendant(s) violated:

FHS

| Code Section | Offense Description |
|---|---|
| 18 USC Sec. 1349 | Conspiracy to Commit Wire Fraud |

This criminal complaint is based on these facts:

See Attached Affidavit of US Postal Inspector Matthew S. Boyden

☑ Continued on the attached sheet.

_____
Complainant's signature

US Postal Inspector Matthew S. Boyden
Printed name and title

Sworn to before me and signed in my presence.

Date:  11/08/2011

_____
Judge's signature

City and state:  Houston, Texas        Frances H. Stacy - US Magistrate Judge
Printed name and title

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

1. Affiant, United States Postal Inspector Matthew S. Boyden, has been employed by the U. S. Postal Inspection Service since January 2000. Affiant is currently assigned to the Major Fraud team in Houston, Texas. Prior to that, Affiant served as a lieutenant of police for a municipal police department in Texas. Affiant has served in the U.S. Air Force as a Law Enforcement Specialist and criminal investigator for the Air Force Office of Special Investigations. Affiant has received specialized training in numerous Postal crimes, but primarily those involving "identity theft" and mail fraud related offenses. Affiant has attended training in the areas of check fraud, credit card fraud, and identity takeover schemes. Affiant has investigated hundreds of cases involving fraud, identity theft, and related "white collar" types of offenses. Affiant is authorized to obtain and execute Federal Arrest and Search Warrants. This Affidavit is made in support of a criminal complaint filed against British National **Mark Allan James** (JAMES).

2. The information set forth in this Affidavit is based upon your Affiant's personal knowledge and/or information provided to Affiant by other law enforcement agents and officers, witnesses, bank investigators, and cooperating individuals Affiant believes to be reliable and credible. Because this Affidavit is being submitted for the limited purpose of supporting a criminal complaint, Affiant has not included each and every fact concerning this investigation. Affiant has set forth only the facts believed to establish probable cause that JAMES has committed violations of federal law, including Title 18 United States Code §1349, Conspiracy to Commit Wire and Mail Fraud.

3. This affidavit outlines a scheme to defraud Hewlett-Packard Development Company, L.P. ("HP"), a technology company with a presence in Houston, Texas, in which JAMES and at least one co-conspirator (CO-CONSPIRATOR #1) utilize straw buyers to make various false representations in order to secure computer products from HP at steeply discounted rates. Commonly known as "Discount Fraud," JAMES recruits individual business owners to pose as persons interested in securing a large volume of computing products and directs them to

falsely state that the procured products will be used internally by those individuals' businesses and will not be resold. Based upon the false representations made by the straw buyers at JAMES's and CO-CONSPIRATOR #1's direction, HP applies steep discounts to the products being sold not only in order to secure a large one-time sale, but also as a means of encouraging customers to use other HP products in their technology infrastructure and to foster a business relationship that will result in future sales of HP's products. In reality, JAMES's intent is to secure the products at the steeply discounted price through fraud and then resell them on the open market. To date it is believed that JAMES, with CO-CONSPIRATOR #1's assistance, is responsible for obtaining over $7 million in fraudulent discounts from HP.

4. In an effort to explain the nature and scope of this investigation, Affiant has broken down this affidavit into several areas that should help clarify and explain the main components of the fraud scheme.

## HP's BIG DEAL PROGRAM

5. HP is a multi-national technology company headquartered in Palo Alto, California which offers a wide-range of computer hardware and software solutions. In approximately 2002, HP merged with Houston-based Compaq Computer Corporation, thereby giving HP a substantial presence in Houston, Texas. HP presently employs about 96,000 people in the US, including its Brand Protection employees, which are based in Houston, Texas. HP sells the majority of its products through distributors and "authorized partners," rather than directly to end user consumers. The majority of HP's sales are through its "Tier 1" distributors who distribute directly to the "Tier 2" partners, and then on to end users. HP also sells a small percentage of its products directly to its largest end users and to certain "Tier 2" partners directly. HP has four "Tier 1" distributors and approximately 35,000 "Tier 2" partners in the United States.

6. HP's distributors and partners are able to obtain HP products at a slight discount from HP's "street" or list price so that they in turn can sell those products for profit to ultimate end users. However, HP has the flexibility to adjust its prices under the direct sale scenario as well as through the indirect distributor/partner model to address unique circumstances and win additional business. For example, partners may request that HP sell products at a steeper discount so that the partner can meet the pricing requirements of particular customers purchasing a large volume of goods. To address such situations, HP developed its "Big Deal" program, which authorizes additional discounts to specific end users when legitimate business reasons justify those discounts. These legitimate business reasons might range from the opportunity for future large volume sales, to encouraging further utilization of HP products in the customer's technology infrastructure, to continuing to provide maintenance on existing HP products. Any customer seeking this special Big Deal discount must provide HP with a wide array of information, including verification that the products are intended solely for the end user's internal use and a verification that the discounted products will not be resold. In the Big Deals HP negotiates directly with an end user, HP simply offers the discounted price directly to its customer. When a Big Deal is negotiated through a distributor or partner, HP must approve of the discount provided to the end user and then HP pays a "rebate" to the distributor/partner equal to the amount of the discount.

7. HP's policies are designed to ensure that their products and services are sold only to legitimate third parties, and in particular to ensure that discounts are not provided to purchasers who ultimately resell their products through unauthorized distribution chains. The resale of goods sold under a Big Deal harms HP, which would not have provided the discount without the false representation that the goods that would be used internally and not be resold. Such Discount Fraud also harms legitimate businesses, as honest resellers lose out on sales opportunities to competing companies that resell the highly discounted products procured by fraud. In other words, the market is destabilized at several levels when resellers are able to undersell honest businesses because they are dealing in products that are cheaper as a result of having been procured through fraud and misrepresentation.

## THE ▮▮▮▮▮ BIG DEAL

8. ▮▮▮▮▮ is a "transport trailer leasing and sales company" located in Toronto, Ontario and owned and operated by Canadian citizen R.G. Beginning around October 2009, JAMES recruited ▮▮▮ to serve as the straw buyer for a large purchase of computer equipment from HP. Specifically, JAMES promised ▮▮▮ an interest in a data center he (JAMES) was purportedly setting up if ▮▮▮ would agree to tell HP that the products being purchased would be used internally by ▮▮▮▮▮ to upgrade their infrastructure and to assist with the management of their logistical operations. ▮▮▮▮▮ requested substantial discounts from HP in order to facilitate this deal. During the weeks of negotiation between HP and ▮▮▮ ▮▮▮ ▮▮▮ made misrepresentations regarding ▮▮▮▮▮ supposed internal use of the products, including in interstate wire communications via e-mail from Canada to HP's Brand Protection Team in Houston, Texas. The 2009 request was tentatively approved pending verification by HP, but ultimately the purchase did not go through.

9. In January 2010, ▮▮▮ renewed his request for special discounts on a new order. Between January and April 2010, ▮▮▮ arranged to purchase approximately $6,824,586 worth of HP products. At JAMES's direction ▮▮▮ continued to represent that the products sought were for the internal use of the company. Based on ▮▮▮'s false representations, HP provided approximately $4,170,025 worth of discounts. On or about April 1, 2010, ▮▮▮ wired $2,968,327.27 (Canadian dollars) from his Toronto-Dominion Bank account to HP to pay for the order. The products were picked up from a logistics warehouse in Houston, Texas, but were never sent to or otherwise used by R.G.

10. Since this occurred, Affiant has interviewed ▮▮▮, who that stated he met JAMES while he was on vacation in the Bahamas. After becoming friends, JAMES asked ▮▮▮ to assist him in obtaining products from HP. ▮▮▮ admitted misleading HP in order to get special pricing. R.G. stated he received all his direction from JAMES. ▮▮▮ stated he received the funds he used to pay HP from JAMES, who sent the money to ▮▮▮ via international wire transfer from a bank account in England under the name Roamer Media, Ltd., a business in the

United Kingdom associated with JAMES. ▆ stated that it was JAMES that arranged for all the products to be picked up in Houston, Texas.

## THE '▆ BIG DEALS

11. ▆ is a sports ticket business located in Indianapolis, Indiana. ▆ is the Chief Operating Officer for ▆. Beginning around June 2010 and continuing through at least June 2011, ▆ arranged for Big Deal discounts by representing to HP and their "Tier 2" partner CDW, that ▆ would use the HP equipment for an "infrastructure re-development" at ▆. Based on ▆'s misrepresentations, HP granted significant discounts to ▆ and paid for those discounts by reimbursing CDW for a total of $2,615,104 in rebates. Specifically, between approx. June 2010 and June 2011, ▆ arranged to purchase approximately $6,082,014 worth of HP products in a series of transactions. Based on ▆'s representations, HP provided approximately $2,615,103 worth of discounts via its partner CDW. ▆ paid CDW for the merchandise through a series of interstate wire transfers.

12. Since this occurred, Affiant has interviewed ▆, who stated he met JAMES while he was on vacation in the Bahamas. After becoming friends, JAMES asked ▆ to assist him in obtaining products from HP. ▆ admitted misleading HP in order to get special pricing. ▆ stated he received all his direction from JAMES and JAMES's associate at Roamer Media, Ltd., CO-CONSPIRATOR #1. ▆ stated he received the funds he used to pay CDW from JAMES via international wire transfer from Roamer Media, Ltd.'s bank account in England. At least a portion of the products purchased under the ▆ Big Deal were shipped by HP in Houston, Texas to CDW in Vernon Hills, Illinois via commercial interstate carrier. ▆ stated it was JAMES that who directed where the products would be shipped once they were purchased from CDW. None of the products were used by ▆ or ▆.

## UNDERCOVER BIG DEAL

13. Your affiant is presently engaged in an undercover transaction wherein JAMES and CO-CONSPIRATOR #1 believe they are negotiating an additional Big Deal with HP via a Cooperating Witness (CW) posing as a straw buyer (the "Undercover Big Deal"). Both JAMES and CO-CONSPIRATOR #1 are familiar with the CW's business, are aware that the CW is not in need of products from HP and that the HP products will not be used by the CW or his/her business. As with the ▆▆▆▆▆ Big Deal, JAMES and CO-CONSPIRATOR #1 have provided instruction to the CW via e-mail and interstate telephone calls regarding how to respond to HP's inquiries concerning the manner and location in which the products will be used. These instructions include the false representation that the products will be used internally by the CW's business. Further, the CW has recorded phone calls with JAMES and CO-CONSPIRATOR #1 wherein they describe the scheme and emphasize the need to avoid revealing that the end user will be anyone other than the CW's business. The negotiations are the point where JAMES and CO-CONSPIRATOR #1 believe they will purchase $1,602,637.30 worth of HP products at the Big Deal price of $717,695.77, for a total discount of $884,941.53. It is unknown at this time whether investigators will ultimately consummate this deal, but both JAMES and CO-CONSPIRATOR #1 have been in frequent e-mail contact with the CW over the last month in an attempt to finalize the transaction and understand that any goods "purchased" will be retrieved in Houston, Texas.

14. Based upon the above, the undersigned believes there is probable cause to believe that **Mark Allan James** has committed Conspiracy to Commit Mail and Wire Fraud in violation of Title 18, United States Code, Section 1349.

*signature*
Matthew S. Boyden
United States Postal Inspector

Sworn and Subscribed to me this 8th day of November, 2011, and I find probable cause.

*signature*
Frances H. Stacy
United States Magistrate Judge